JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-01938-RGK-AGR | Date | March 16, 2018 |
|---|---|---|---|
| Title | *Cesar Baez v. Pension Consulting Alliance, Inc. et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant's Motion for Summary Judgment (DE 69)

## I. INTRODUCTION

On March 10, 2017, Cesar Baez ("Baez") filed this action against Pension Consulting Alliance, Inc. ("PCA") and Michael Moy ("Moy," and together with PCA, "Defendants"). PCA previously conducted a due diligence investigation into Baez and his company Centinela on behalf of CalPERS, who was considering hiring Centinela to manage an investment fund. Moy headed the investigation for PCA. The only remaining claim in this action is for intentional interference with contractual relations premised on an email that Moy sent during the due diligence process. Baez alleges that, through this e-mail, Defendants intentionally caused CalPERS to force Baez out of Centinela in order to disrupt his contractual relationships with Centinela and CalPERS. Defendants now move for summary judgment, or alternatively partial summary judgment, on this claim.

For the following reasons, the Court **GRANTS** Defendants' Motion.

## II. FACTUAL BACKGROUND

Baez is an investment professional who, along with Robert Taylor ("Taylor") and Fidel Vargas ("Vargas"), formed the investment group Centinela. Centinela operated a private equity "fund of funds" through a series of limited liability companies ("Centinela LLCs").

CalPERS is a public entity that manages pension-fund investments for California's public employees. CalPERS selected Centinela to manage a $500 million investment ("Fund I") in 2006 and a second $500 million investment ("Fund II") in 2008. Thus, by 2008, Centinela was managing nearly $1 billion of California's public-pension money. Before awarding Centinela with either fund, CalPERS hired PCA to perform due diligence on Centinela.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-01938-RGK-AGR | Date | March 16, 2018 |
|---|---|---|---|
| Title | *Cesar Baez v. Pension Consulting Alliance, Inc. et al.* | | |

CalPERS had a "no fault" termination right under the agreements for both Fund I and Fund II. In return for managing Funds I and II, Centinela was to receive management fees and back-end profit known as "carried interest." Through his ownership interest in certain Centinela LLCs, Baez had a 36.5% interest in the carried interest and investment distributions from Funds I and II. Baez also received a salary, funded by the management fees earned in connection with Funds I and II.

In 2009, CalPERS began discussions with Centinela for a proposed third fund ("Fund III"). CalPERS again hired PCA to perform due diligence on Centinela. Moy, a PCA principal, conducted the due diligence investigation. Around this time, an investment scam involving two senior CalPERS officers – known as the "pay-to-play scandal" – received widespread publicity. CalPERS was concerned about the effect the pay-to-play scandal could have on its financial and reputational wellbeing. Thus, Moy conducted due diligence for Fund III with those concerns in mind.

On January 3, 2011, Moy contacted Baez via e-mail, seeking information regarding the circumstances surrounding Baez's departures from past employers and Baez's relationships with certain people involved in the pay-to-play scandal. In response, Baez described the requested relationships as ranging from a brief meeting, to a limited business relationship, to an ongoing but infrequent social relationship. (Moy Decl. Ex. H at 125–26, ECF No. 69-37.) Baez indicated he left his past employers amicably or voluntarily. *Id.*

The next day, Moy wrote an e-mail ("Moy E-mail") to CalPERS's Chief Investment Officer Joseph Dear ("Dear"). In the Moy E-mail, Moy indicated that PCA was "in the early stages of third party reference calls," and that "[Baez's] input contradicted that received in [a] reference call." (Moy Decl. Ex. I at 127, ECF No. 69-38.) Moy requested approval to hire a private investigator ("Control Risks"), stating his belief that "this would be the most prudent course of action to resolve the differences between the two inputs." (*Id.*) Within an hour, Dear approved hiring Control Risks as "a prudent step." (*Id.*) The parties dispute whether PCA in fact received input that contradicted Baez's response to the January 3, 2011 e-mail.

After engaging Control Risks, PCA continued to perform due diligence on Centinela, including by meeting with Baez to ask follow-up questions concerning his relationships with those involved in the pay-to-play scandal. PCA sent CalPERS a Summary of Review discussing its findings on February 4, 2011.

On February 14, 2011, Baez, Taylor, and Vargas met with Dear, Moy, and two other CalPERS employees. The group discussed several items highlighted in PCA's Summary of Review, including the following: Centinela's decision to invest in a company with direct ties to the investment committee chair and trustee for the Teacher Retirement System of Texas ("TRS") while trying to obtain business from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-01938-RGK-AGR | Date | March 16, 2018 |
|---|---|---|---|
| Title | *Cesar Baez v. Pension Consulting Alliance, Inc. et al.* | | |

TRS; Centinela's lack of fundraising traction; Centinela's poor financial condition and viability; Baez's relationship with people involved in the pay-to-play scandal; and Baez's role at Centinela. Dear felt the findings presented by PCA presented fitness and judgment issues and "headline risks," and told Centinela CalPERS would not proceed absent a change in Centinela's leadership structure. Centinela later presented a proposal in an effort to address Dear's concerns, but Dear rejected the proposal and stated he would not do business with Centinela if Baez remained involved in the company.

In June 2011, PCA reported the results of its due diligence investigation, noting that although it "uncovered no evidence of wrongdoing," Baez's professional and personal relationships with people involved in the pay-to-play scandal "may be perceived as a reputational concern." (Moy. Decl. Ex. Y at 218, ECF No. 69-54.) Nevertheless, PCA concluded it would be prudent to award Fund III to Centinela for up to a year provided that Centinela reorganized its management structure and CalPERS closely monitored Centinela's performance. (*Id.* at 222.)

After receiving PCA's report, CalPERS continued considering Centinela as part of a Request for Information ("RFI") process that compared Centinela to its peers.

In August 2011, about one month into the RFI process, Baez entered into a written Separation Agreement with Centinela. The original term sheet for Baez's separation was created back in May 2011. The Separation Agreement preserved Baez's right to receive 36.5% of the carried interest and investment distributions for Funds I and II. Baez received his last salary payment from Centinela in July 2011.

CalPERS did not award Fund III to Centinela, and in July 2012 CalPERS terminated Centinela under the no-fault provisions of Funds I and II.

### III.    JUDICIAL STANDARD

Pursuant to Rule 56(c), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)-(b).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-01938-RGK-AGR | Date | March 16, 2018 |
|---|---|---|---|
| Title | *Cesar Baez v. Pension Consulting Alliance, Inc. et al.* | | |

attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324. The materiality of a fact is determined by whether it might influence the outcome of the case based on the contours of the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over such facts amount to genuine issues if a reasonable jury could resolve them in favor of the nonmoving party. *Id.*

### IV.   DISCUSSION

To prove intentional interference with contractual relations, the plaintiff must show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55–56 (1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). Defendants argue summary judgment is proper because Baez cannot prove intent, causation, or damages. Separately, Defendants argue the statutory privilege defense, Cal. Civ. Code § 47(c), defeats Baez's claim as a matter of law. As explained below, the Court finds no reasonable juror could find intent or causation in this case. As such, the Court does not address Defendants' remaining arguments.

#### A.   Intent to Disrupt Baez's Contractual Relationships

A defendant acts with intent to cause a breach or disruption of the plaintiff's contract if the defendant acts with a primary purpose or desire to interfere with the contract or if the defendant "knows that the interference is certain or substantially certain to occur as a result of his action." *Quelimane Co.*, 50 Cal. 3d at 56. That is, intent can be inferred if the defendant knows interference is "a necessary consequence of his action." *Id.*

Defendants characterize the Moy E-mail as stating no conclusions and merely seeking permission to hire a private investigation firm to look further into Baez's relationships. Defendants argue no reasonable trier of fact could conclude that such a request was substantially certain to disrupt Baez's existing contracts with Centinela and CalPERS. Baez counters that intent can be inferred from Moy's claim that Baez gave PCA information regarding his former employers and personal relationships that contradicted input from a third party reference ("contradicting input statement"). According to Baez, the Moy E-mail called Baez's honesty into question and, given CalPERS's concern with the "fitness of managers" following the pay-to-play scandal (Moy Decl. ¶ 6, ECF No. 75), was therefore substantially certain to disrupt his contractual relationship with Centinela. In addition, Baez argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-01938-RGK-AGR | Date | March 16, 2018 |
|---|---|---|---|
| Title | *Cesar Baez v. Pension Consulting Alliance, Inc. et al.* | | |

Moy knew his contradicting input statement was false, and that he therefore must have made the statement with the primary purpose of interfering with Baez's contractual relationships.

The Court agrees with Defendants: no reasonable jury could find Moy intended to interfere with Baez's contractual relationships by sending the Moy E-mail. The Moy E-mail indicated a need to continue investigating Baez and sought approval for an additional expenditure to facilitate that investigation. A request for additional investigation by necessity indicates that neither Moy nor PCA had reached a conclusion regarding what, if any, risk Baez posed to CalPERS. Baez's separation from Centinela was not a necessary consequence of stating a need for additional investigation. In addition, even assuming Moy knew his contradicting input statement was false, this is not sufficiently probative of intent to create a genuine issue of fact. *See Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (stating summary judgment is proper if the opposing evidence "is merely colorable"). As Defendants argue, why would Moy request an additional expenditure and more thorough investigation if his intent was merely to lambast Baez? Baez offers unsatisfactory responses to this question. No triable issue as to intent exists in this case, and so Defendants are entitled to judgment as a matter of law.

**B.   Causation**

Even if Defendants had the requisite intent, a reasonable trier of fact could not find causation.

"California employs the 'substantial factor' test for determining causation in intentional torts cases." *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008) (citing *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375 (2004)).[1] To be substantial, a factor must play more than an "infinitesimal or theoretical part in bringing about injury, damage, or loss," but it need not be the only cause. *Id.* (quoting *Rutherford v. Owens–Illinois, Inc.*, 16 Cal. 4th 954 (1997)). The conduct at issue must be part of the factual chain of causation. *Id.* "Under the Restatement (Second) of Torts, an actor's conduct 'is not a substantial factor in bringing about harm to another if the harm would have been sustained' in the absence of the actor's conduct." *Moore v. Apple Inc.*, No. 14-CV-02269-LHK, 2015 WL 7351464, at *3 (N.D. Cal. Nov. 20, 2015) (quoting Restatement (Second) of Torts § 432(1)).

---

[1] Defendants argue the "but for" causation test applies in intentional torts cases, citing *Eltolad Music, Inc. v. April Music, Inc.*, 139 Cal. App. 3d 697, 706 (1983) (holding "the plaintiff had the obligation to prove that defendant was 'the moving cause'" in an intentional interference case). This Court's review of relevant California case law, however, finds more support for applying the substantial factor test. *See, e.g., Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391 (2004); *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007) (citing *Franklin*, 116 Cal. App. 4th at 391); *Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1177, 1196 (2011) (same). Regardless, the Court finds no causation in this case under either test.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-01938-RGK-AGR | Date | March 16, 2018 |
|---|---|---|---|
| Title | *Cesar Baez v. Pension Consulting Alliance, Inc. et al.* | | |

Here, the Moy E-mail played too minute a role in the timeline leading to Baez's separation to render it a substantial factor. CalPERS retained PCA to conduct due diligence on Centinela, including Baez, before the Moy E-mail. There is no indication that PCA's investigation into Baez would have ceased or produced different results absent the Moy E-mail; the investigation merely would have continued without Control Risks. Most importantly, there is no indication that Dear's insistence on Baez's departure or his reservations about Centinela were substantially based on the Moy E-mail. Rather, the evidence indicates Dear's position was based on the reports resulting from PCA's due diligence – reports that this Court has already ruled are not actionable. The fact that the Moy E-mail predated Baez's separation and CalPERS's decision to terminate Centinela is insufficient to create a triable issue. *See Franklin*, 116 Cal. App. 4th at 393–394 (reasoning that a cause and effect relationship does not follow from a temporal sequence of events alone). Absent causation, Baez's intentional interference with contractual relations claim fails. Defendants are entitled to summary judgment as a matter of law.

**V.   EVIDENTIARY OBJECTIONS**

To the extent the parties have objected to any of the evidence relied upon by the Court, those objections are overruled for purposes of this Order.

**VI.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer